## COURT OF APPEALS, JUNE TERM, 1797.

### BICKHAM *vs.* GOUGH.

APPEAL from the Court of Chancery. The bill filed by the present appellant, stated, that the defendant *(Gough)* being, or pretending to be seised, of a lot of ground in Baltimore-town, No. 22, did on the 8th of November, 1788, enter into an agreement with the complainant, to sell and convey to him, in fee, two parts of the said lot, which parts are described, &c. It was at the same time agreed, that the complainant should pay to the defendant 363*l.* current money, with interest, &c. Bond was entered by the defendant on the said 8th of November, 1788, to convey, &c. Bond was also entered into by the complainant for the payment of the said 363*l.* with interest, &c. the purchase money for the said two parts of a lot, &c. That the defendant has obtained judgment on the last mentioned bond; that the complainant was willing to pay the money upon being put into possession of the whole of the said two parts, and getting a deed for the same; that parts of the said lot were in the possession of other persons, with whom the defendant had contracted to sell. Prayer for an injunction, and for a specific performance, &c. *Exhibit.* The bond from *Gough* to *Bickham,* dated the 8th of November, 1788, reciting a deed from *Bourdillion* and others, to *Gough,* dated the 26th of April 1771, for six lots or parcels of ground in Baltimore-town, viz. Nos. 15, 16, 21, 22, 26 and 35; that *Gough,* in consideration of 363*l.* with interest, &c. secured by bond dated the 8th of November 1788, payable on the 8th of December following, did bargain and sell unto the said *Bickham,* all those parts of lot No. 22, contained within a particular description therein set forth, with condition that the said *Gough,* upon payment of the said sum of money, and interest, should by good and sufficient

deed make over and convey to the said *Bickham* " all that, the said *Gough's* estate, right, title and interest, of and in the said part or parcels of ground above described, No. 22, with the appurtenances, &c.

*Answer.* Admits that the defendant was formerly seised and possessed of the whole of the lot No. 22, and that on the 16th of December, 1773, he sold the largest or last mentioned part of the said lot to a certain *Peter Welch,* for 145*l.* sterling; that on the 15th of June 1774, *Welch* sold to *Jacob Small,* who took up *Welch's* bond and gave his own; but the defendant does not recollect that he gave a new bond to *Small* for conveyance; that on the 15th of May, 1777, *Jacob Fowble* purchased of *Small,* and *Fowble* gave his bond for the money, but the defendant does not recollect whether he gave a fresh bond of conveyance. *Fowble* afterwards sold *half* to *Stark,* and on the 3d of February, 1781, *Stark* sold part to *John Myers,* and gave him a bond for conveyance; *Myers* afterwards sold to *Daniel Deady,* and assigned *Stark's* bond; that on the 12th of September, 1781, *Fowble* sold the *residue* to *Herman Stidgar,* liable to the debt due to the defendant, and the defendant believes *Stidgar* knew of the sale to *Stark;* that on the 3d of November 1782, the defendant settled with *Stidgar,* who gave a bond for 145*l.* and took the defendant's bond for conveyance of the *whole,* without attending to the right of *Stark;* that on the 8th of December, 1781, the defendant sold the smallest piece to *Stidgar;* that he received interest from *Stidgar* on both bonds; that *Stidgar* became insolvent, and *Samuel Owings* appointed his trustee; that on the 8th of November 1788, the complainant having before married *Stidgar's* daughter, and having purchased *Stidgar's* right from *Owings,* his trustee, applied to the defendant, and got him to take his bond for the principal of both debts, and the defendant gave his bond of conveyance for the pieces of ground in the same manner he had given it to *Stidgar;* that it was the practice of the defendant to put one purchaser in the place of the other; that *Stidgar* knew of the sale to *Stark,* and the defendant believes the complainant also knew it; he did not complain he had not all his land until after he had paid a year's interest; the part in the possession of the complainant was covered with valuable buildings before the bond was given by the defendant to the complainant.

The case was argued before the Chancellor, by *Martin,* (attorney-general) for the complainant, and by *Cooke, S. Johnston,* and *J. Carroll,* for the defendant.

The defendant's counsel contended, that there was no equity in the complainant's bill; that the defendant ne

ver made but one contract for the whole lot, and never made any with the complainant at all; that the complainant's allegation that he purchased of the defendant, is false—He purchased of *Owings*, who, as *Stidgar's* trustee, sold only *Stidgar's* right; that the complainant knew when he purchased, and long before, the extent of *Stidgar's* claim; he had married his daughter, and had built the wall between him and *Myers*. The defendant having given his bond to the complainant for the *whole lot*, instead of *Stidgar's* part of it, was a mistake in copying the original bond, instead of designating particularly the part which each person, who held the lot subdivided, claimed. The defendant ought to convey to *each* his proportion, and he is ready to do so, but can convey the *whole* to neither; and the complainant is *unjustly* endeavouring to force a conveyance for what *he never purchased*. The only question (they contended) was, whether the court of chancery would carry this mistake into effect, or would it not rather correct it.

It is the peculiar jurisdiction of chancery to relieve *mistakes* and correct them; but there never was an instance in which the court of equity *would enforce* any agreement, contract or bond, founded on such mistake.

It is a rule that every agreement ought to be fair and just, and free from mistake, or the court will not decree execution. 3 *Atk.* 386, 190.

Courts of law and equity will relieve against a deed founded on mistake, as equivalent to fraud. *Cowp.* 599, 600.

Where the contract is *executory* the court will inquire into the circumstances before it will decree the execution. 3 *Atk.* 388. 2 *Atk.* 99, 100.

A mistake in drawee is as much a head of relief as fraud. 2 *Atk.* 203. 1 *Brown* 92, 350. 1 *Vez.* 457, 126, 221, 222, 229, 401.

The court may set aside such part of the bond which exceeds the original purchase of the complainant, and leave it a security for the performance of that only. 1 *Wils.* 231.

The complainant comes here for equity, and must do it. How can he in conscience ask a conveyance for the whole when he purchased only part.

HANSON, Chancellor. [*November* term 1794,] The case appears to be as follows: The complainant purchases from *Samuel Owings* a piece of ground in Baltimore-town, subject to the claim of the defendant, in whom remains the legal title, for the price of the whole lot, or division, from which the said piece was taken. The defendant is apprised of the dimensions of the said piece, and that the possession of the residue of the lot

JUNE, 1797.

Bickham, vs. Gough.

June, 1797.

Bickham
vs.
Gough.

is in another person. It is agreed between the complainant and defendant, that the former shall pass his bond to the latter for the amount of his whole claim, and that the defendant in return shall pass his bond for the conveyance to the complainant of the ground purchased by him; but instead thereof the defendant's bond is passed for the conveyance of the whole lot or division.

Thus, from the testimony in this cause, the facts appear. But it is conceived that the expression in the condition of the defendant's bond cannot be controuled by parol evidence; and that, in as much as the defendant thereby engaged to convey the whole lot, he cannot be permitted to recover the money, in consideration of which he executed the bond, unless he can make a good indefeasible title to the whole lot. It is not at the same time considered, that the complainant applies to be relieved against a bond, which does not express the consideration for which it was given; and that the consideration can appear only from the defendant's answer, or from the parol evidence taken on commission. But the answer which is supported by that evidence shews the consideration of the bond, and the facts, to be as above stated. What then is the equity of the case? Should the defendant convey the whole lot or division to the complainant? Nothing can be better established than is the rule of this court, by which the defendant would be considered as only a trustee of that part to which he knew the equitable title to be in another person. If then, the defendant make the complainant a good title to that part which he actually purchased, wherein consists the injury? In short, there never was a case in which a complainant, whatever advantage he might suppose he could have at law, had less reason to expect the interference of a court of equity.

It is thereupon, this 2d day of December, 1794, by A. C. Hanson, chancellor, and by the authority of this court, adjudged, ordered and decreed, that the injunction heretofore issued in this cause be dissolved,

And it is further adjudged, &c. that when the defendant shall have levied or received the principal and interest due on the bond of the complainant put in suit as mentioned in the bill and answer, and likewise the legal costs by the said defendant expended at law in the prosecution of the said suit, and the legal costs expended in this court by the defendant in the defence of this suit, as taxed by the register, the said defendant, H. D. Gough, by a good deed, indented, acknowledged by him, and to be recorded agreeably to law, shall give, grant, bargain and sell, release and confirm, unto the com-

plainant, *J. Bickham,* and his heirs, the piece of ground
first mentioned in the said bill, and also the piece of
ground which is delineated on the plot filed by the de-
fendant, and referred to by the depositions, comprehend-
ed within the lines." &c. &c.

The complainant appealed to the court of appeals,
and the case was entered *abated* at this term, (June
1797,) by the death of the appellant.